UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CHERYL KALAGIAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:12-cv-4055-SLD |
| ) | |
| CAROLYN W. COLVIN, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Affirmance. For the reasons set forth below the Court hereby denies Plaintiff's Motion for Summary Judgment, ECF No. 10, and grants Defendant's Motion for Summary Affirmance, ECF No. 13.

**BACKGROUND**

Plaintiff Cheryl Kalagian brought this case on June 15, 2012, challenging the determination of the Social Security Administration ("SSA") that she was not disabled and, accordingly, not entitled to benefits.

Kalagian initially applied for Supplemental Security Income ("SSI") on November 3, 2005. Social Security Transcript (the "Record," hereinafter "R.") at 72–76. Her claims were denied on April 17, 2006, and upon reconsideration on September 22, 2006. R. 77–81, 83–86. Kalagian again applied for SSI on February 3, 2009, alleging disability beginning in September 2008, which is the basis for the present case. R. 152–167. Her claims were denied on May 27, 2009, and again on reconsideration on October 1 of that same year. R. 87–91, 95–102. Kalagian

1

requested a hearing before an administrative law judge ("ALJ"), R. 103, and a hearing was held on March 2, 2011, R. 36. Legal counsel represented Kalagian at the hearing, and Dennis Gustafson testified as a neutral vocational expert ("VE"). R. 36.

At the time of the SSA's administrative hearing, Kalagian was 57 years old, 5'3 ½'' tall, and weighed approximately 250 pounds. R. 40. She was divorced with two children, and resided with her ex-husband, son and 18-year-old granddaughter. R. 40–41. Kalagian received her GED and enjoyed reading novels in her free time. R. 43, 55. Her typical day included completing crossword puzzles, napping frequently, lying on a heating pad, and talking with her granddaughter as she got ready for school. R. 53. Kalagian was able to write emails to her family, drive during the day, and visit the local Senior Center. R. 55–57.

Kalagian last worked as a convenience store cashier in the late summer or early fall of 2008. R. 43–44. She described losing that job because she consistently had to lean on the cashier's counter due to back pain and her employer refused to excuse her when her sister suffered from a stroke. *Id.*; R. 63–64. She described other work taking care of elderly people, serving food, working in an office, and managing apartments and restaurants. R. 44–48.

Kalagian alleges that she became disabled and lost her ability to work on September 1, 2008. R. 285. Kalagian's alleged conditions include anxiety, depression, chronic obstructive pulmonary disorder, and chronic pain related to arthritis and fibromyalgia. Pl.'s Mot. Summ. J. 1. According to Kalagian, she could walk about 200 feet before she would be out of breath, could not walk a block without stopping, and had trouble with stairs. R. 59. She could last one hour alternating between sitting and standing before she had to lie down, and she needed to elevate her legs 30 to 40 percent of the day. R. 60–61. Additionally, her fibromyalgia confined

her to bed several days per month and she had difficulty with grip strength including handling coffee cups and dropping things. R. 49, 65.

Despite her conditions, the ALJ found that Kalagian had been conservative in her treatment to become well. R. 22. She continued to smoke cigarettes, although she attempted to quit or cut back. R. 49. She had not complied with her doctor's recommendations for weight loss, such as to exercise more frequently. Though compliance would help to offset her obesity and fibromyalgia, she stated that she could not afford a discounted gym membership at the YMCA. R. 49–50. Additionally, doctors noted that Kalagian had a habit of requesting narcotic pain medications in lieu of other more beneficial alternatives. R. 22–23, 25, 672, 688, 787.

After hearing testimony from the VE, discussed more fully below, the ALJ ultimately issued a finding that Kalagian had the following severe impairments: obesity, a history of myocardial infarction with occasional chest pain, hypertension, chronic obstructive pulmonary disease ("COPD"), asthma, degenerative joint disease/arthritis, degenerative disc disease (spondylosis and mild disc space narrowing with back pain), fibromyalgia, and right rotator cuff tendonitis. However, none of those impairments met or equaled the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20–21. The ALJ next found that Kalagian had the residual functional capacity ("RFC") to perform light exertional work, except that she was further limited to never climbing ladders, ropes, or scaffolds, as well as no concentrated exposure to respiratory irritants. R. 21. The ALJ, relying on the VE's testimony, determined that Kalagian was not disabled and could return to her past relevant work under that RFC finding. R. 26–27.

**LEGAL FRAMEWORK**

I.  **District Court Review of the ALJ's Decision**

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court's role is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *See Cannon v. Apfel*, 213 F.3d 970, 975 (7th Cir. 2000). To determine whether substantial evidence exists, the court reviews the record as a whole but does not reconsider facts, reweigh evidence, resolve conflicts in evidence, or decide questions of credibility. *See id.* (citing *Williams v. Apfel*, 179 F.3d 1066, 1072 (7th Cir. 1999)). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Even if reasonable could differ concerning a disability determination, the ALJ's decision must be affirmed if it is adequately supported. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (citations omitted). Rather, the ALJ's decision must "sufficiently articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning." *Id.* at 595 (quoting *Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999)). Further, the ALJ's decision must build an accurate and logical bridge

between the evidence and the ultimate conclusions. *Id.* "Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) (citing *Kararsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2002)).

## II.   Entitlement to Benefits

In order to be entitled to SSI and/or Disability Insurance Benefits ("DIB"), a plaintiff must show that her inability to work is medical in nature and that she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Social Security Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).

Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *See McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). This factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test requires the ALJ to evaluate whether the plaintiff:

1) Has not, during the relevant time period, performed any substantial gainful activity;

2) Suffers from an impairment that is severe or whether a combination of his impairments is severe;

3) Suffers from an impairment which matches or is substantially equivalent to an impairment in the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1);

4) Is unable to perform his former occupation; and

5) Is unable to perform any other work within the national economy.

An affirmative answer at steps 1, 2 or 4 leads to the next step of the test. An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. Conversely, a negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at step 3 will require the ALJ to make a finding about the plaintiff's RFC based on all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The RFC is then used at steps 4 and 5 to determine whether the plaintiff can perform past relevant work or can adjust to other work, respectively. *Id.*

The plaintiff has the burden of production and persuasion at steps 1 through 4. But once the plaintiff shows an inability to perform past work (step 4), the burden shifts to the Commissioner to show that the plaintiff is able to engage in some other type of substantial gainful employment (step 5). *Tom v. Heckler*, 779 F.2d 1250, 1252–53 (7th Cir. 1985).

**DISCUSSION**

Kalagian appeals the Commissioner's decision denying her benefits for the following reasons: First, she claims that the ALJ's RFC finding was not supported by substantial evidence. Second, she asserts that the ALJ failed to accurately assess her credibility. Third, she argues that the ALJ failed to support her finding that Kalagian could return to her past work with findings of fact. Lastly, Kalagian claims that she is entitled to a new hearing because the tape from her hearing is inaudible.

I. **The ALJ's Residual Functional Capacity Findings**

Kalagian first argues that the ALJ failed to support her RFC findings with substantial evidence. Pl.'s Mot. Summ. J. 7. The RFC is an evaluation of what work-related activities the claimant is able to perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). An RFC determination "must be based on *all* the relevant evidence in the case record." SSR 96-8p. All relevant evidence includes medical history, reported daily activities, recorded observations, need for a structured work environment, the effects of treatment, and medical opinions. *Id.* The ALJ must consider all limitations resulting from claimant's impairments, including those that are not severe. *Id.* Additionally, the ALJ is required to cite to specific medical or non-medical evidence when explaining his decision. *Id.* If the ALJ's RFC determination conflicts with a medical opinion in the record, the ALJ must discuss why he did not adopt the position. *Id.* Finally, the ALJ must explain any material inconsistencies between the RFC assessment of the claimant and the evidence in the record. *Id.*

  A. **Ability to perform sustained work activities in an ordinary work setting on a regular basis**

Kalagian claims the ALJ erred by not considering evidence related to her alleged problems with concentration and ability to work at a sustained pace. Pl.'s Mot. Summ. J. 8. But the ALJ did consider such evidence; she just did not find a limitation in the RFC related to concentration was warranted. While the Court does not "rubber stamp" the ALJ's decision, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). An ALJ's RFC determination sufficiently incorporates restrictions related to concentration, persistence, or pace where she builds an

accurate and logical bridge between the evidence and the ultimate conclusions. *See Scott v. Barnhart*, 297 F.3d at 593.

Kalagian put forth some medical evidence that she argues shows she cannot work a regular work schedule, e.g. her need for frequent, unscheduled breaks or absences due to depression, anxiety, and other mental health issues. Pl.'s Mot. Summ. J. 10. Evidence relating to Kalagian's mental health issues will be discussed in the following section, and will reveal her mental health issues were not disabling.

Here, the ALJ considered the opinions of state agency physicians Drs. Bilinsky and Vincent, who found that Kalagian could lift/carry 20 pounds occasionally and 10 pounds frequently, as well as stand/walk for about six hours and sit for about six hours out of an eight-hour day. R. 24, 722, 747–49. On September 30, 2009, Dr. Vincent found that Kalagian would be able to sustain work related activity, and could perform a limited range of light exertional work based on his medical analysis. R. 749. Both doctors found she could also occasionally climb ladders, ropes, and scaffolds. R. 723; *see also* R. 747–49. The ALJ stated that he determined the RFC to be "somewhat different" from that recommended by Drs. Bilinsky and Vincent "in that it is based on all the evidence of record including evidence not before the [Drs.]." R. 24.

While the ALJ also addressed Kalagian's claims relating to her ability to maintain a consistent work pace, that evidence was found to be contradictory to medical opinions. Specifically, Kalagian testified that she was unable to walk more than 200 feet and needed to keep her feet elevated 30 to 40 percent of each day, but the ALJ found those statements to be not credible for reasons discussed below. The ALJ also addressed the record of a physician's assistant that related to Kalagian's ability to work at a consistent pace. Kalagian told the

physician's assistant that she tried to keep her legs elevated 30 to 40 percent of the day, that she previously had edema (swelling), and that she had been prescribed Lasix. R. 737–39. Kalagian argues that evidence of swelling and the need for leg elevation impeded her ability to work at a normal pace; however, further explanation by the physician's assistant clarified that Kalagian was prescribed Lasix to help her ankle swelling, yet was non-compliant with the treatment and stopped taking the medication. R. 24, 737–38. A claimant is required to follow prescribed treatment in order to receive disability benefits if that treatment could restore his/her ability to work, unless there is an acceptable reason for non-compliance. 20 C.F.R. § 416.930. Kalagian did not state an acceptable reason for not complying with her prescription for Lasix, which had proven to be helpful in the past for Kalagian. R. 24, 737. Therefore, the ALJ did not err by discounting Kalagian's testimony.

The Court elects not to disturb the ALJ's determination that the physicians' opinions deserved more weight than Kalagian's testimony. Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Kalagian had the ability to work at a consistent pace in a normal workday/week without interruptions.

> **B. Restrictions in persistence, concentration, and pace due to depression, anxiety, and fatigue.**

Kalagian next argues that the RFC determination was flawed because the ALJ failed to take into account her depression, anxiety, and fatigue. Pl.'s Mot. Summ. J. 8. For example, Kalagian claims that the ALJ failed to consider evidence from Drs. McCollum and Sales that proves her depression caused her functional restrictions. *Id.* While Dr. McCollum's medical evidence may provide evidence of depression, these medical opinions were made on January 12, 2006, well before the period at issue. R. 524. Kalagian applied for SSI on February 3, 2009, alleging disability beginning in September, 2008, which is the basis for the present case. R. 152–

9

167. A claimant is required to demonstrate her disability "within the prescribed period of eligibility, not prior to nor subsequent to the dates in question." *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir. 1971).

The ALJ did address new evidence relating to Kalagian's depression for the period at issue when she noted that Kalagian reported depression again on October 12, 2009. R. 25. In addition, Kalagian was able to work while she was depressed as diagnosed by McCollum. R. 187, 293–97. No evidence shows that Kalagian's depression substantially worsened or inhibited her ability to work during the relevant period, and therefore the impairment is not disabling. *Pepper v. Colvin*, 712 F.3d 351, 364 (7th Cir. 2013) (citing *Eichstadt v. Astrue,* 534 F.3d 663, 666 (7th Cir. 2008) (stating that certain conditions pre-dating the claimant's insured status were irrelevant when evaluating the claimant's application for benefits because the claimant "was able to engage in substantial gainful employment during and after experiencing these problems")). Therefore, the Court finds that substantial evidence supports the ALJ's decision to not give Kalagian's alleged depression greater weight.

### C. The ALJ accounted for Kalagian's obesity and fibromyalgia.

Kalagian next argues that the RFC determination failed to properly include restrictions due to her obesity and fibromyalgia. Pl.'s Mot. Summ. J. 13, 14. With respect to obesity, the ALJ stated that Kalagian's obesity was considered under the principles set forth at Social Security Ruling 02-1p, and specifically stated that Kalagian's obesity affected all her other conditions and was considered when determining her RFC. R. 21 ("Her obesity affects all her other impairments (heart/hypertension, respiratory, musculoskeletal/fibromyalgia pain) . . . "). The ALJ also explained that Kalagian's RFC would have been greater without the aggregate effects of Kalagian's obesity. R. 27.

Kalagian additionally argues that the ALJ failed to accurately consider her fibromyalgia by not including a more severe limitation in the RFC and by not considering the waxing and waning nature of her condition. Pl.'s Mot. Summ. J. 14. However, no evidence supports such an increased limitation. The ALJ noted that Kalagian's fibromyalgia was considered a severe impairment and stated that Kalagian took medication and sought treatment for fibromyalgia. R. 20, 24–25. In forming the RFC, the ALJ gave Kalagian restrictions of light work and no exposure to temperature extremes based partially on her fibromyalgia. R. 21. Therefore, the Court finds the RFC's accounting for Kalagian's obesity and fibromyalgia was supported by substantial evidence.

## II. The ALJ's credibility finding

Next, Kalagian argues the ALJ failed to evaluate the proper factors when assessing her credibility. Pl.'s Reply Br. 3. Pursuant to the Social Security Administration's interpretation policy, a claimant's subjective description of a physical or mental impairment is evaluated under a two-step process. *See* SSR 96-7p. First, the ALJ is required to assess whether there exists an "underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." *Id.* If such an impairment exists, the ALJ must determine the "intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id.* If the claimant reports symptoms that are "not substantiated by objective medical evidence," the ALJ must determine the credibility of these statements in light of the entire record. *Id.*

The ALJ must the state "specific reasons" for his credibility determination of the claimant's statements. SSR 96-7p; *see also Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). Unsubstantiated statements that the claimant's symptoms have been "considered" will not

suffice. SSR 96-7p. The ALJ is obligated to state enough of the rationale underlying his credibility determination so the claimant and reviewing bodies understand why the credibility determination was reached. *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994). The courts will give "special deference" to an ALJ's credibility determination, and an ALJ's determination is subject to reversal only if it is "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010).

The ALJ determined at the first step that Kalagian did have an underlying medically determinable physical or mental impairment. Kalagain takes issue at the second step, where the ALJ determined the intensity, persistence, and limiting effects of her impairments were not supported by objective medical evidence.

Here, the Court finds that the ALJ had at least two reasons to discount Kalagian's credibility. First, she failed to comply with medication. A claimant's failure to comply with medication can cast doubt on the severity of the impairment. *Schmidt v. Astrue,* 496 F.3d 833, 844 (7th Cir. 2007). Physician's Assistant Mally noted that Kalagian had been non-compliant in refilling her medications. R. 753. Kalagian also did not show up for a scheduled pain specialist appointment, chose to ignore advice she did not prefer, and refused to exercise to lose weight because she said she could not afford a discounted membership at the YMCA, even though she was still purchasing cigarettes. R. 753. Kalagian also was non-compliant with a directive to use an oxygen machine at night, reporting to Physician's Assistant Mally that she unplugged it and had not found time to plug it back in. R. 52, 826.

Second, a claimant's testimony can also be discounted if there is evidence of drug-seeking behavior. *Cf. Kellems v. Astrue*, 382 F. App'x 512, 515 (7th Cir. 2010). Although there is no standard to define "drug seeking behavior," each case attempting to provide a definition

involved attempts to manipulate a medical individual.  *Id.*  Kalagian showed a pattern of requesting narcotic medications, despite advice that narcotics were not her best option.  R. 22, 25, 672, 688, 787.  She took Vicodin and Flexeril for degenerative arthritis, but had not seen an orthopedic surgeon pursuant to advice and had no recent x-rays to review her arthritis.  R. 22.  The ALJ noted that Kalagian obtained numerous prescriptions for Vicodin despite continued advice that Vicodin should not be used for chronic pain and her best option was to exercise and lose weight.  R. 22, 25, 672, 688, 787.  Given this evidence, the ALJ's decision to discount Kalagian's testimony was not "patently wrong."  *Jones*, 623 F.3d at 1160.

### III. The ALJ's Finding Regarding Kalagian's Past Work

Kalagian argues that the ALJ's assessment of past work does not include a finding of fact as to the physical and mental demands of her past jobs as required by SSR 82-62.  Pl.'s Mot. Summ. J. 11.  The ALJ does not need to spell out every step in the reasoning, "if it provides enough of the steps that the full course may be discerned."  *Brown v. Bowen*, 847 F.2d 342 (7th Cir. 1988).  Here, the VE testimony supported the ALJ's ultimate findings that Kalagian could return to her past relevant work.  Def.'s Mot. Summ. Affirmance 14.  By relying upon the VE's testimony (which indicated the occupationally significant characteristics, skill level, physical demands, and acquired skill of those jobs), the ALJ effectively incorporated the VE's testimony about the requirements of those jobs.

### IV. New Hearing Due To An Inaudible Hearing Tape

Lastly, Kalagian argues that she is entitled to a new hearing pursuant to HALLEX I-3-7-14(F) because the transcript omits as inaudible portions of the hypothetical questions posed by Kalagian's attorney.  Pl.'s Mot. Summ. J. 7.  In support, she claims that the Court is prevented from properly reviewing the case and that she is precluded from properly defending her claim.  *Id.*  HALLEX is a Social Security Administration policy manual written to convey "guiding

principles, procedural guidance, and information to the Office of Disability Adjudication and Review staff." HALLEX I-1-0-1.

HALLEX does not govern proceedings in this Court, and district courts in this circuit have found not only that it does not carry the authority of law, but that it may not even be binding on an ALJ. *See Gardner v. Barnhart*, No. 02 C 4578, 2004 WL 1470244, at *19 (N.D. Ill. June 29, 2004) ("HALLEX does not carry the authority of law."); *see also Plumb v. Astrue*, 4:10-CV-6-TLS, 2011 WL 3610647, at *11 (N.D. Ind. Aug. 16, 2011) ("[M]ultiple circuits find the HALLEX to be non-binding or differ on its influence."). Moreover, on its own terms, HALLEX I-3-7-14 states that the Appeals Council "may" remand for inaudible hearing recordings, not that it must.

Here, Kalagian argues for a remand based on a small portion of her attorney's questions to the VE marked as inaudible in the transcript. Pl.'s Mot. Summ. J. 7 (citing R. 68, 69). She does so with spurious legal support. Since the small omissions in the transcript have not precluded meaningful judicial review, and because Kalagian has not demonstrated that she was prejudiced by deficient transcription of her own attorney's questions, the Court will not remand her case on this basis.

## CONCLUSION

For the foregoing reasons, the Court hereby denies Kalagian's Motion for Summary Judgment, ECF No. 10, and grants the Commissioner's Motion for Summary Affirmance, ECF No. 13.

Entered this 30th day of September, 2013.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE